UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NATHANIEL H.,**

    **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 1:20-cv-3598
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Nathaniel H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 6, 2016, R. 77–79, 88, 97–99, 190–201, and later amended his alleged disability

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

onset date to March 17, 2016, R. 271.[2] The applications were denied initially and upon reconsideration. R. 119–28, 133–38. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 141–43. Administrative Law Judge ("ALJ") Scott Massengill held a hearing on October 9, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35–73. In a decision dated January 4, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the alleged disability onset date through the date of that decision. R. 19–29. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on March 9, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 20, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On October 21, 2020, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[2] Plaintiff, an adult who was born on March 18, 1994, R. 190, 193, sought, *inter alia*, child's benefits on the earnings record of an insured person who is entitled to benefits, which requires that he prove disability under the Social Security Act that began before the age of 22. 20 C.F.R. § 404.350; *Ricci v. Apfel*, 159 F. Supp. 2d 12, 16 (E.D. Pa. 2001). Although not raised by any party, the decision of the administrative law judge makes confusing references to various alleged disability onset dates, dates of birth, and Plaintiff's age. R. 19, 21, 28–29. It would be helpful if this information were clarified on remand.

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

4

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4),

5

416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder, obsessive-compulsive disorder, schizoaffective disorder, intellectual disability, and obstructive sleep apnea. R. 21–22. The ALJ also found that Plaintiff's diagnosed Wolff-Parkinson-White Syndrome and obesity were not severe. R. 22.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–23.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 23–27. The ALJ also found that Plaintiff had no past relevant work. R. 27.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 58,000 jobs as a warehouse worker; approximately 90,000 jobs as a janitor; approximately 46,000 jobs as a packager—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28–29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from his alleged disability onset date to the date of the decision, nor was he disabled prior to the date on which he attainted age 22. R. 29.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 20.

## IV. RELEVANT MEDICAL EVIDENCE

Lawrence P. Clinton, M.D., Plaintiff's treating physician, completed an undated, six-page, fill-in-the-blank, check-the-box form entitled, "Social Security Disability Psychiatric Report." R. 287–92 ("Dr. Clinton's undated opinion").[4] Dr. Clinton first treated Plaintiff on December 27, 2007, and he last saw Plaintiff on November 10, 2016. R. 287. Dr. Clinton diagnosed, *inter alia,* bipolar II disorder, obsessive-compulsive disorder, and schizoaffective disorder and specifically noted that Plaintiff "is a very credible person." *Id.* Upon mental status examination, Dr. Clinton noted that Plaintiff was oriented times three; had no suicidal or homicidal ideation, psychosis, hallucinations, or delusions; his mood and affect were anxious and fearful; his concentration was poor; his memory was "ok"; his intellect was average; and his judgment was poor. R. 288. Dr. Clinton commented that Plaintiff also suffered from panic attacks. R. 289. Based on his medical findings, Dr. Clinton opined that Plaintiff's anxiety interferes with his understanding and memory, that Plaintiff is limited in his ability to sustain

---

[4] The Court is unable to decipher several portions of Dr. Clinton's handwritten notes. Accordingly, this summary reflects only those portions that the Court was able to decipher.

8

concentration and persist because he is confused and "freaks out"; that Plaintiff is limited in his ability to interact socially, "*e.g.*, interact with the public, ask simple questions, accept supervisory instructions, get along appropriately with co-workers, adhere to basic neatness and cleanliness[,]" because he has increased anxiety around people; and that Plaintiff is limited in his ability to adapt, *i.e.*, respond appropriately to changes in the work setting, be aware of hazards, travel/use public transportation, set realistic goals, and make plans independently. R. 290. In response to the question whether there were any other conditions that limit Plaintiff's ability to engage in work related activities, Dr. Clinton checked the box marked "Yes" and wrote, *inter alia*, anxiety, fear, memory blanks, and sleep apnea. *Id.* See also R. 291. According to Dr. Clinton, Plaintiff's prognosis was "guarded" and Dr. Clinton did not believe that Plaintiff was capable of managing or directing the management of his benefits in his own best interest. *Id.*

On February 6, 2017, Dr. Clinton answered a series of check-the-box and fill-in-the-blank questions under the heading "Assessment of Ability to Do Work-Related Activities (Mental)." R. 301–04 ("Dr. Clinton's 2017 opinion"). In rating Plaintiff's ability to perform work-related activities on a regular and continuing basis (eight hours a day, five days a week, or the equivalent) in a regular, competitive (not sheltered) work setting, Dr. Clinton used a rating scale numbered 1 to 5, with a score of "1" reflecting no observable limitations and a score of "5" reflecting the most severe limitation.[5] *Id.* Dr. Clinton assigned a score of "3" to Plaintiff's ability

---

[5] Specifically, a score of "1" indicated an ability "to perform designated function with no observable limits"; a score of "2" indicated an ability "to perform designated function, but has or will have noticeable difficulty no more than 10 percent of work day or work week (*i.e.*, one-half day or less per week)"; a score of "3" indicated an ability "to perform designated function, but has or will have noticeable difficulty from 11-20 percent of the work day or work week (*i.e.*, more than one-half day per week)"; a score of "4" indicated an ability "to perform designated function, but has or will have noticeable difficulty more than 20 percent of the work day or work week (*i.e.*, more than one hour per day or one day per week)"; and a score of "5" indicated an inability "to perform designated function on a regular, reliable, and sustained basis." R. 301.

9

to understand and remember very short, simple instructions, a score of "4" to his ability to remember locations and work-like procedures, and a score of "5" to his ability to understand and remember detailed instructions. R. 301–02. Dr. Clinton assigned a score of "1" to Plaintiff's ability to carry out very short and simple instructions, a score of "3" to his ability to carry out detailed instructions; a score of "4" to his ability to sustain ordinary routines without special supervision; and a score of "5" to his abilities to maintain attention for extended periods of time (two-hour segments), maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. R. 302–03. Dr. Clinton assigned a score of "4" to Plaintiff's ability to ask simple questions or request assistance and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and a score of "5" to his ability to interact appropriately with the general public and accept and respond appropriately to criticism from supervisors. R. 303. Dr. Clinton assigned a score of "4" to Plaintiff's his ability to be aware of normal hazards and take appropriate precautions and a score of "5" to his ability to respond appropriately to changes in the work setting and to set realistic goals and make plans independently of others. *Id.*[6] Dr. Clinton's diagnoses included bipolar II disorder, obsessive-compulsive disorder, and schizoaffective disorder. R. 304.

---

[6] The Court is unable to decipher Dr. Clinton's handwritten answer in response to the question asking him to explain these assessments in narrative form. R. 304.

10

**V.    DISCUSSION**

Plaintiff argues, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider Dr. Clinton's opinions or Plaintiff's severe impairment of sleep apnea. *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 14–18, 23–26. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels but with certain nonexertional limitations, as follows:

> The claimant is able to perform work at any exertional level. He is able to understand and remember simple, routine instructions and carryout repetitive tasks. He is also able to make simple, work-related decisions and use common sense, and able to deal with minor or few changes in a routine work setting. Furthermore, the

11

> claimant is able to have occasional, non-collaborative, interaction with co-workers, and is able to have no interaction with the general public. The claimant is able to perform tasks, which are goal oriented, not on an assembly line or production based, with the addition of being off-task five percent of the time in addition to normal breaks, and absent one day per month.

R. 23–24. In reaching this determination, the ALJ, *inter alia*, assigned "some weight" to Dr. Clinton's undated opinion and gave "little weight" to his 2017 opinion, explaining as follows:

> The undersigned gives some weight to the [undated] opinion of Dr. Clinton (Exhibit 2F, at 3-8). Dr. Clinton reported that he had been treating the claimant since December 27, 2007, and his last visit was November 10, 2016. Dr. Clinton opined that the claimant had limitations in understanding and memory, sustaining concentration and persistence, and social interaction. The undersigned gives this opinion some weight, as Dr. Clinton is a treating source; however, the undersigned also notes that this opinion contains difficult to read findings and limitations.
>
> The undersigned gives little weight to the opinion of Dr. Clinton dated February 6, 2017 (Exhibit 3F). Dr. Clinton opined the claimant had significant limitations in understanding and memory, sustaining concentration, and persistence, social interaction, and adaptation. The undersigned gives this opinion little weight. The undersigned does note that Dr. Clinton is a long treating physician of the claimant. However, the undersigned does note that Dr. Clinton's opinion is inconsistent with the record as a whole, and not supported with relevant evidence.

R. 27. Plaintiff challenges the ALJ's evaluation of Dr. Clinton's undated opinion, arguing, *inter alia*, that the ALJ, in according "some weight" to this opinion, failed to clarify which portion of the opinion he credited and which portion he rejected. *Plaintiff's Memorandum of Law*, ECF No. 17, p. 14; *Plaintiff's Reply Brief*, ECF No. 23, p. 2. The ALJ's failure in this regard, Plaintiff argues, deprives the Court of an ability to meaningfully review the ALJ's assessment of the opinion. *Id*. The Acting Commissioner does not respond to these specific arguments. *See generally Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20.

Plaintiff's arguments are well taken. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests"

12

sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, an ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli,* 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[7] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec*., 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec*., 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

---

[7] As previously noted, Plaintiff's claims were filed in May 2016. For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"), 416.920c(a) (same). The later regulation also emphasizes the importance of two factors, supportability and consistency, when evaluating medical opinions. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). While Defendant correctly notes that Plaintiff erroneously cited to the wrong regulation, *see Plaintiff's Memorandum of Law*, ECF No. 17, p. 17 (citing 20 C.F.R. § 404.1520c), this mistake does not impact the Court's reasoning discussed later in this decision.

at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician

conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, when according "some weight" to Dr. Clinton's undated opinion, the ALJ did not explain which portion of this opinion he credited and which portion he rejected. R. 27. Without this explanation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *See Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705); *Fargnoli*, 247 F.3d at 42. For example, Dr. Clinton specifically opined that Plaintiff's sleep apnea, which the ALJ identified as a severe impairment, R. 21, limited Plaintiff's ability to perform work-related activities, R. 290–91. However, as Plaintiff points out, after identifying sleep apnea as a severe impairment at step two, the ALJ never again considered Dr. Clinton's undated opinion regarding the impact of sleep apnea on Plaintiff's ability to function—or, indeed, any limitations related to sleep apnea—nor did the ALJ, when crafting the RFC, otherwise explain why no limitations apparently resulted from that severe impairment. *See* R. 21, 23–27; *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 9, 16, 24, 26. Although an ALJ is free to determine whether and to what extent to credit a treating physician's opinions, the ALJ cannot reject evidence from a treating physician "for no reason[.]" *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Fargnoli*, 247 F.3d at 43 (stating that when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence."). Moreover, as previously discussed, without explaining why the ALJ accepted some evidence but rejected other

evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705–06; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705); *Fargnoli*, 247 F.3d at 42.

In addition, in assigning "some weight" to Dr. Clinton's undated opinion, the ALJ appears to have credited that portion of the opinion that found limitations in Plaintiff's ability to interact socially, R. 27, 290, because the RFC limited Plaintiff to only "occasional non-collaborative, interaction with co-workers, and… no interaction with the general public." R. 23–24. However, the ALJ included no limitation relating to interaction with supervisors, *see id*., despite Dr. Clinton's opinion that Plaintiff's limitations in the area of social interaction extended to interaction with supervisors. *See* R. 290. Notably, "[t]he public, *supervisors*, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." *Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015); *see also Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms. Thus, limitations on two of these types of interactions does not account for limitations on the third.") (internal quotation marks and citations omitted). Notably, "an inability to appropriately interact with or respond to criticism from supervisors is distinct from an inability to interact with either coworkers or the public. The Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers" as separate aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' any basic mental demand could 'severely limit the potential occupational base.'" *Melissa R. v. Berryhill*, No. 2:17-CV-07716-AFM, 2018 WL

6507898, at *4 (C.D. Cal. Dec. 11, 2018) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)); *see also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why he is doing so.").

The ALJ's omission in this regard and failure to explain this omission take on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, R. 28–29, was asked to assume a claimant who is limited only in his ability to interact with co-workers and the public. R. 65–66. *See Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *1–2 (W.D. Pa. Sept. 23, 2014) ("This omission infects the hypothetical to the vocational expert, which, in this case, did not include a reference to interaction with supervisors. . . . This matter must be remanded so that the ALJ may address whether he rejected this limitation, or, if he failed to consider it, to do so.") (citations omitted); *Capo v. Comm'r of Soc. Sec.*, No. CV 2:17-1280, 2018 WL 5982435, at *4 (W.D. Pa. Nov. 13, 2018) (remanding action where the "Plaintiff correctly argues that the ALJ's RFC finding [that limited the plaintiff, *inter alia*, to only occasional public interaction, but containing no similar restrictions as to Plaintiff's interactions with supervisors and/or co-workers] appears inconsistent with his acceptance of Dr. Marion's moderate limitations, specifically, the moderate limitation on interactions with supervisors and/or co-workers. Although the ALJ is entitled to reject limitations that are unsupported by the record, he must provide the reasons for discounting that evidence"). Accordingly, this Court cannot conclude that substantial evidence supports the ALJ's evaluation of Dr. Clinton's undated opinion or the RFC finding. *See id.*; *Sanford v. Comm'r of Soc. Sec.*,

No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the undated opinion of Lawrence P. Clinton, M.D., R. 287–92, and, in particular, for clarification of those portions of the opinion that are credited and those portions that are rejected, and for further consideration of the RFC determination in light of Dr. Clinton's opinions.[8]

## VI.  CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  November 19, 2021                                   *s/Norah McCann King*
                                                                            NORAH McCANN KING
                                                                            UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Clinton's undated opinion, the Court does not consider those claims. However, the Court observes that it would be helpful on remand if the parties clarified Dr. Clinton's handwritten notes reflecting his opinions and the details supporting those opinions. *See* R. 287–91, 301–04. In addition, the Court notes that, in weighing the opinion of Lewis Lazarus, Ph.D., a consultative examiner, the ALJ assigned "partial weight [to Dr. Lazarus' opinion] to the extent that his opinion is consistent with medical records, and was able to perform a one-time evaluation of the claimant[,]" R. 27, and assigned "limited weight" to the opinion of Alan Gordon, Ed.D, who performed a psychological evaluation at the request of the Division of Vocational Rehabilitation Services, *id.* On remand, it would be helpful if the ALJ clarified which portions of these opinions are credited and which portions are rejected.